IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


**RAMON ARMAS BORROTO, JR.,**

    **Plaintiff,**

**vs.**                                                  Case No. 5:04cv165-RH/WCS

**OFFICER McDONALD, et al.,**

    **Defendants.**

_____/


## REPORT AND RECOMMENDATION ON MOTION TO DISMISS

This report and recommendation is entered concerning Defendants argument that Plaintiff has not exhausted his administrative remedies. Prior to that analysis, a brief procedural review would be beneficial.

On January 13, 2005, Defendants filed a motion to dismiss asserting that Plaintiff failed to exhaust administrative remedies and, thus, this action should be dismissed under 42 U.S.C. § 1997e(a). Doc. 24. Plaintiff was given an opportunity to file a response to the motion, doc. 25, and after reviewing Plaintiff's response, doc. 29, an order was entered directing Defendants to provide a legible copy of the grievance identified by Plaintiff on the grievance log. Doc. 32. Defendants provided the

grievance, doc. 33, and after review, a report and recommendation was entered finding that Plaintiff had not exhausted administrative remedies and recommending dismissal. Doc. 34.

Shortly after entering the report and recommendation, Plaintiff filed another response, doc. 35, alleging that he "filled out a DC6-303 formal grievance (emergency grievance) let his cellmate . . . read it, and placed it in the prison's internal mailing system to be mailed directly to the Secretary, of Florida Department of Corrections (F.D.O.C.) all in the presence of said cellmate David Blake Brooks." Plaintiff reported that a few days later a "Captain John Doe" came to his cell with a nurse and had the grievance in his hand (that Plaintiff contends should have been mailed to the Secretary's Office). *Id.* Plaintiff said that the Captain questioned Plaintiff about the grievance and his allegations of physical abuse, and had the nurse examine Plaintiff for injuries. *Id.* On December 19, 2002, Plaintiff stated that Inspector Kraus from the Inspector General's Office interviewed Plaintiff and took a sworn statement from Plaintiff concerning the matter. *Id.* Following that interview, "Inspector Kraus had the plaintiff immediately transferred from Washington C.I. to Santa Rose C.I." *Id.* Plaintiff also stated that he never received a response to his emergency grievance, and after sending a second emergency grievance to the Secretary's Office, Plaintiff "never received a response to the second emergency grievance" either. *Id.*

Plaintiff asserts in this second response that after he places his grievances in the prison's mailing system, the documents are no longer under Plaintiff's control. Doc. 35. Plaintiff reports that he did all he could do and put "forth due diligence in an attempt to comply with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) exhaustion

requirements." *Id.* Plaintiff argues that he put the Defendants on notice of his claims by filing two separate emergency grievances, and that is all that he can do, especially when the grievances were in the hands of the John Doe Captain, although they should have "gone directly to the Secretary of F.D.O.C." *Id.*

After considering Plaintiff's response, doc. 35, and noting that Defendants' motion to dismiss acknowledged the fact that Plaintiff was transferred on December 19, 2002, doc. 24, p. 3, it was unclear whether or not Plaintiff had exhausted his claim, especially in light of the Inspector General's investigation. Thus, the report and recommendation, doc. 34, was vacated and Defendants were directed to file a copy of the Inspector General's report from the Investigation. Doc. 36. Defendants have now provided the Investigation Report. Doc. 37, ex. 1. Defendants also submitted an additional document, a photocopy of an e-mail, which purports to state that Plaintiff was transferred from Washington Correctional Institution to Santa Rosa Correctional Institution for a "population adjustment." Doc. 37, ex. 2. That document appears to be submitted as a reply to Plaintiff's assertion in the prior response that Inspector Krause had Plaintiff immediately transferred. Doc. 35, p. 1.

**Standard of Review**

Dismissal of a complaint, or a portion thereof, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted should not be ordered unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A court must accept as true the allegations of the complaint when ruling upon such a motion. Oladeinde v. City of Birmingham, 963 F.2d

1481, 1485 (11th Cir. 1992)(citation omitted), *cert. denied*, 113 S. Ct. 1586 (1993).  *Pro se* complaints should be held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

**Analysis**

Plaintiff has maintained that he filed two written emergency grievances directly to the Secretary.  Doc. 35.  One such grievance Plaintiff believed to be log number 02-12025, based on Defendant's submission of documents, and Plaintiff thought that although the subject was improperly listed as "discipline," it was his grievance concerning the alleged abuse at issue in this case because he did not submit any other grievances during that period of time.  Doc. 29.  Defendants submitted a copy of the identified grievance appeal, grievance number 02-12025, and it is clear that the grievance is not about the subject matter of this civil rights action (physical abuse), but about Plaintiff's assertion that officials at Washington C.I. were improperly "carrying over disciplinary confinement time that was assessed prior to [Plaintiff's] placement on Close Management."  Doc. 33, ex. A.  Further, Plaintiff's grievance is signed by Plaintiff on November 13, 2002.  Doc. 33, exhibit.  That date is prior to the alleged incident and cannot possibly be the grievance Plaintiff alleges he submitted to the Secretary.  That grievance, thus, does not establish that Plaintiff presented his claim to prison officials and gave them an opportunity to address the claim.

There is an allegation of another grievance, one that was submitted in writing to be sent to the Secretary's office.  Plaintiff alleges that an officer appeared at his cell with a copy of this written grievance.  As will be seen, the Inspector General's report states

that the Inspector General's investigation began when Plaintiff made an oral complaint to Captain Scott. This record does not contain a copy of any other written grievance.

The Inspector General's Investigation is identified as case number 02-13942. Doc. 37, ex. A, p. 1. The investigation report indicates that on November 29, 2002, Plaintiff reported to Captain Scott that he had been physically abused on the morning of November 28, 2002. Doc. 37, ex. A, p. 4. It states that Captain Scott provided Plaintiff's allegations of physical abuse to "the Tallahassee Field Office on December 2, 2002." *Id.* "The case was assigned to Inspector Jon Kraus on December 2, 2002," but was reassigned to a different Inspector in late January, 2003. *Id.* The investigation reveals that Plaintiff gave an affidavit on November 29, 2002, the day after the alleged abuse, and gave "a sworn, tape-recorded interview conducted on December 19, 2002." *Id.*, at 6. The date of Plaintiff's interview is the date that Plaintiff was transferred from the institution where the alleged abuse took place.

One of the supporting documents with the Investigation Report is an Incident Report prepared by Captain Scott. Doc. 37, ex. A, p. 11. The date he signed the form is November 29, 2002, and at the bottom of the form is a direction by the acting warden to "forward to Inspector for further review." *Id.* This form provides evidence that Plaintiff alerted prison officials to his claim of physical abuse in late November, 2002, and that an Inspector General's investigation, originating from the Secretary's office in Tallahassee, was begun in early December, 2002.[1]

---

[1] While not necessary to resolution of the issue of exhaustion of administrative remedies, there is evidence that Plaintiff was transferred as a result of the Inspector General's investigation. Defendants submitted a photocopy of an email which represents that Plaintiff was transferred from Washington Correctional Institution to Santa Rose Correctional Institution "for population adjustment." Doc. 37, ex. B. The

Case 5:04-cv-00165-RH-WCS   Document 38   Filed 06/02/05   Page 6 of 8

It is true that 42 U.S.C. § 1997e(a) requires exhaustion of "such administrative remedies as are available" before an inmate can file suit in federal court. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1324-26 (11th Cir. 1998); *see also* <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). However, the purpose of the exhaustion requirement is simply for a prisoner to give fair notice to the Defendants as to the information he has at hand in support of his claim. <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons).

> A fair notice standard for determining administrative exhaustion does not disturb the policies advanced by amended § 1997e. Congress amended § 1997e to reduce the quantity and improve the quality of prisoner lawsuits. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Administrative exhaustion reduces the quantity of prisoner suits by giving state officials an opportunity to take corrective action in response to prisoner grievances and, thereby, eliminates the need for some claims to be litigated, particularly frivolous claims. *Id.* at 525, 122 S.Ct. 983. Administrative exhaustion improves the quality of prisoner suits by facilitating the development of "an administrative record that clarifies the

---

email is dated December 19, 2002, at 1:56 PM and contains as the "subject" matter, Plaintiff's name, Department of Corrections' ID number, and then the words, "IG TRANSFER." *Id.* The email also shows an "importance" level of "High," which might be unusual for a standard "population adjustment" transfer. The notation after that also states "Washington will transport as soon as authorized today." A comment suggesting an immediate transfer is also perplexing for a run-of-the-mill population adjustment, especially when no other inmates were listed as being transferred. A population adjustment of one inmate would not appear to warrant such a high priority. Finally, the email lists "Case # 02-13942" and provides the identification of the "Inspector: Jonathan Kraus." *Id.*

contours of the controversy" in advance of litigation.  *Id*.  A fair notice standard continues to give state prison officials first opportunity to respond to a prisoner's allegations of mistreatment or misconduct.  If a district court determines that prison officials have not been given fair notice of the claim being litigated against a defendant, the court will dismiss the claim against that defendant for failure to exhaust.

Burton v. Jones, 321 F.3d 569, 575 (6th Cir. 2003).

Further guidance as to the purpose of the exhaustion requirement is found in Bolton v. United States, 347 F.Supp.2d 1218 (N.D. Fla. 2004), decided by this Court.  In that case, the prisoner had not submitted grievances at the higher levels because he "had achieved at the informal resolution stage all the relief that was available within the administrative process."  347 F.Supp.2d at 1220.  Defendant contended that the complaint should be dismissed for failure to exhaust all administrative remedies, but the Court found this argument to make "no sense."  *Id*.  The Court found that "nothing in the Prison Litigation Reform Act requires a prisoner to pursue administrative remedies beyond the point of complete success."  *Id*.

Plaintiff asserts that he filed a grievance, but implies that the original paper grievance never made it to the Secretary level.  But whether or not a paper grievance was filed in this particular case overlooks the practical effect of the Inspector General's investigation.  Plaintiff's grievance was taken seriously by Captain Scott at the institutional level and resulted in an investigation by the Inspector General, who acts on behalf of the Secretary.  All administrative levels of the Department of Corrections considered the merits of Plaintiff's grievance.  Thus, the purposes of the requirement that all levels of the grievance process be exhausted have been fulfilled in this case.

Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss, doc. 24, be **DENIED**, and this case be **REMANDED** to the undersigned for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on June 1, 2005.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**